**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

*Respondent,*

vs.

Case No. 18-10140-EFM

ALEXANDER KANEHOALAN LOUIS, III,

*Petitioner.*

**MEMORANDUM AND ORDER**

Before the Court is Petitioner Alexander Kanehoalan Louis III's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 25). Louis asserts that he received ineffective assistance of counsel and requests that the Court amend his sentence of 87 months to 60 months. For the reasons discussed below, the Court denies Louis's motion.

## I.    Factual and Procedural Background

On August 6, 2018, a Sedgwick County sheriff's deputy initiated a traffic stop on Louis after Louis ran a red light. After smelling an odor of marijuana coming from Louis's car, the deputy searched the vehicle. The deputy located substances that appeared to be marijuana, cocaine, and methamphetamine, as well as scales, plastic baggies, and a loaded handgun. On April 3, 2019, Louis pleaded guilty to felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

On July 3, 2019, the Court sentenced Louis to 87 months on each count, with the counts to run concurrently.

On June 19, 2020, Louis filed his current motion, arguing that his counsel was ineffective in: (I) failing to argue the relevance of a then-pending Supreme Court case; (II) failing to file a direct appeal on his behalf; (III) failing to investigate the circumstances of the traffic stop leading to his arrest and failing to file a motion to suppress on his behalf; and (IV) failing to object to the facts of his indictment at sentencing. In response to Louis's motion, the Government requested that an evidentiary hearing be held on the matter.

This Court assigned counsel to Louis and held an evidentiary hearing in the matter on April 30, 2021. At the evidentiary hearing, Louis affirmatively waived his argument in subsection IV of his motion to vacate. The Court heard evidence on the remaining three issues. The Court will address the testimony presented regarding the three remaining issues below.

## II.    Legal Standard

Section 2255(a) of Title 28 of the U.S. Code provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Petitioners seeking relief under § 2255 must allege facts that, if proven, would warrant relief from their conviction or sentence.[1] Upon receipt of a § 2255 motion, the court must hold an evidentiary

---

[1] *See Hatch v. Okla.*, 58 F.3d 1447, 1469 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[2]

### III.    Analysis

Louis contends that he received ineffective assistance of counsel.   To succeed on a claim of ineffective assistance of counsel, a petitioner must prove both prongs of the two-prong test set forth in *Strickland v. Washington*: (1) that his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) that the deficiency prejudiced the petitioner because it deprived him of the right to a fair trial.[3]  To prevail on the first prong, a petitioner must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[4]

With regard to the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[5]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[6]  This requires the court to focus on "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[7]  Courts reviewing an attorney's performance must exercise deference, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

---

[2] 28 U.S.C. § 2255(b).

[3] 466 U.S. 668, 687–88 (1984).

[4] *Id*. at 690.

[5] *Id*. at 694.

[6] *Id.*

[7] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 687).

professional judgment."[8]  Further, a failure to prove either of the *Strickland* prongs is dispositive to a petitioner's claim, and a court may dispose of either the first or second prong, whichever is easier to resolve.[9]

## A.     Louis's *Rehaif* Claim Does Not Provide a Basis for Relief from His Sentence

Louis first moves this Court to amend his sentence on the basis that he would not have entered a guilty plea, but for his counsel's alleged failure to inform him of the potential implications of the then-pending Supreme Court case, *Rehaif* v. *United States*.[10]

In *Rehaif*, the petitioner was charged with illegally possessing firearms as an alien unlawfully in the United States in violation of 18 U.S.C. § 922(g) and § 924(a)(2).[11]  Subsection 924(a)(2) provides that " 'whoever knowingly violates' certain subsections of § 922, including § 922(g), 'shall be' subject to penalties of up to 10 years' imprisonment."[12]  In turn, subsection 922(g) provides that "[i]t shall be unlawful for any person . . . being an alien . . . illegally or unlawfully in the United States . . . [to] possess in or affecting commerce, any firearm or ammunition."[13]

At trial, the judge instructed the jury that the United States was not required to prove that Rehaif knew he was unlawfully present in the United States.  On appeal, Rehaif argued the judge erred in instructing the jury that it did not need to find that Rehaif knew he was in the country

---

[8] *Strickland*, 466 U.S. at 690.

[9] *United States v. Orange*, 447 F.3d 792, 796–97 (10th Cir. 2006) (citations omitted).

[10] 139 S. Ct. 2191 (2019).

[11] *Id.* at 2194.

[12] *Id.* at 2195 (quoting 18 U.S.C. 924(a)(2)) (alteration omitted).

[13] 18 U.S.C. § 922(g)(5).

unlawfully.[14]   The Supreme Court reversed the district court, holding that the "knowingly" language of § 924 must be applied to all material elements of the offense.[15]   Thus, the Government was required to prove that the defendant knew he had the relevant status when he possessed the firearm.[16]

Louis now argues that had his trial counsel, Jennifer Amyx, informed him that a favorable decision in *Rehaif* could require the government to prove that he knew of his status as a felon at trial, he would not have entered a guilty plea.[17]   In light of the testimony presented at the April 30 hearing and looking to *Strickland*, the Court concludes that Louis cannot satisfy either prong of the *Strickland* test.

First, Amyx's representation was not constitutionally deficient.  Amyx testified at the April 30 hearing that she was aware of *Rehaif* before Louis entered his plea.  Amyx testified that the Federal Public Defenders office presents regular training regarding pending cases and that Amyx had conducted her own research on the case because she had one client whom she believed could particularly benefit from a favorable decision.  Amyx testified that she talked to Louis about the case but did not spend a lot of time on it because she believed even a favorable outcome would not ultimately help Louis in his case.  She further testified that because drug sentencing guidelines were driving Louis's potential sentence, the drug charges—not the firearms charge—were the preeminent issues in his case.  Finally, Amyx testified that because Louis had just completed an

---

[14] *Rehaif*, 139 S. Ct. at 2195.

[15] *Id.* at 2195.

[16] *Id.* at 2194.

[17] *Rehaif* was argued before the Supreme Court on April 23, 2019—approximately three weeks after Louis entered his guilty plea.  The Court issued its ruling in the matter on June 21, 2019—approximately a week and a half before Louis was sentenced.

eight-year sentence for felony conduct, she did not believe Louis had a credible argument under *Rehaif* that he did not know was a felon.

Amyx's testimony—which Louis did not dispute—shows that she had knowledge of the pending *Rehaif* case and considered the implications on Louis's case before discussing it with him. Under *Strickland*, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[18]  The Court therefore concludes that Amyx's conduct did not fall "outside the wide range of professionally competent assistance."[19]

Further, Louis has failed to demonstrate that but for Amyx's advice regarding *Rehaif*, "the result of the proceeding would have been different."[20]  Since *Rehaif*, the Tenth Circuit has rejected a nearly identical claim of error.  In *United States v. Trujilo*,[21] a defendant entered a guilty plea before the *Rehaif* decision.[22]  In light of *Rehaif*, he argued on appeal that his guilty plea was constitutionally invalid because the district court did not inform him "that, if he proceeded to trial, the Government must also prove he knew he was a felon when he possessed the firearm and ammunition."[23]  Louis now echoes the same argument, asserting that because he was not put on notice during his plea colloquy that knowledge of his status as a felon could become an element of the offense which the government would have to prove at trial, his plea was unknowing and involuntary.

---

[18] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 690).

[19] *Strickland*, 466 U.S. at 690.

[20] *Id*. at 694.

[21] 960 F.3d 1196 (10th Cir. 2020).

[22] *Id*. at 1200–01.

[23] *Id*. at 1201.

In *Trujilo*, the Tenth Circuit applied the plain error standard of review.[24] Thus, the defendant was required to show that there was (1) an error; (2) that was plain; and (3) which affected his substantial rights.[25] The Tenth Circuit concluded that although "the district court correctly applied the law as it existed at the time, the court's failure to inform Defendant of the knowledge-of-status element constitutes error that is plain on appeal."[26] With regard to the third prong, in the context of a guilty plea, a defendant generally "must show 'a reasonable probability that, but for the error, he would not have entered the plea.' "[27] If, however, a defendant can establish " 'certain structural errors undermining the fairness of a criminal proceeding as a whole,' a defendant satisfies the third prong 'without regard to the mistake's effect on the proceeding.' "[28]

The *Trujilo* defendant argued that such an error existed because his plea was rendered unknowing and involuntary.[29] The Tenth Circuit disagreed, noting that "the Supreme Court has repeatedly recognized that constitutional errors are not always structural errors" and that "the Supreme Court has applied the doctrine of structural error 'only in a very limited class of cases.' "[30] Thus, the court held that it was not persuaded that the structural error doctrine should be expanded

---

[24] *Id.*

[25] *Id.* (citations omitted).

[26] *Id.* (citation omitted).

[27] *Id.* (citation omitted).

[28] *Id.* (citation omitted).

[29] *Id.* at 1202.

[30] *Id.* at 1205 (citations omitted).

"to include those in which a district court fails to inform a defendant of the knowledge-of-status element of a felon in possession charge under 18 U.S.C. § 922(g)(1)."[31]

Because the court did not find structural error, it proceeded to the third prong of plain error review.[32] The court concluded that the defendant could not "show a reasonable probability that, had he been advised of the knowledge-of-status element, he would not have entered the plea."[33] In so concluding, the court noted that defendant had served a total of four years in prison for six felony offenses. Thus, he could not "credibly claim he was unaware that he was a felon," and given the strength of the Government's case, he could not "plausibly suggest he would have proceeded to trial if he knew the Government would be required to prove knowledge of status."[34]

The facts here are nearly identical. Louis served eight years in prison on a felony conviction prior to his 2018 arrest. Like the *Trujilo* defendant, Louis cannot credibly suggest he did not know that he was a felon, nor is it plausible that he would have proceeded to trial had he known the Government would be required to prove he knew of his status. Further, Louis admitted that he knew of his status as a felon as part of his plea agreement with the Government. In light of *Trujilo*, this Court concludes that neither Amyx's performance, nor the Court's failure to advise Louis regarding the knowledge-of-status element of the Government's claim "render[ed] the result of the . . . proceeding fundamentally unfair."[35] Further, Louis has failed to demonstrate that but

---

[31] *Id.*

[32] *Id.* at 1208.

[33] *Id.* (citation omitted).

[34] *Id.*

[35] *Lockhart*, 506 U.S. at 372 (citing *Strickland*, 466 U.S. at 687).

for Amyx's advice regarding *Rehaif*, "the result of the proceeding would have been different."[36] The Court will not alter Louis's sentence on this basis.

**B.     Louis's Trial Counsel Was Not Ineffective in Failing to File an Appeal on Louis's Behalf**

Next, Louis argues that Amyx was ineffective in failing to file an appeal on his behalf. Again, the Court concludes that Amyx's representation of Louis was not constitutionally deficient. At the April 30 hearing, Amyx testified that she and Louis were both disappointed by the Court's sentence of 87 months, and that Louis asked her if he could appeal the sentence because it was above the 60-month sentence recommended in the plea. Amyx testified that she reported to Louis that, because the Court's sentence was a downward variance from the Sentencing Guidelines, the exception to the plea agreement would not apply.[37]

Amyx testified that she sent Louis a letter shortly after sentencing explaining that she was closing the case and did not plan to file an appeal on his behalf. She testified that she did not know that Louis wanted to appeal, and that if she had known, she would have been happy to file the appeal. She also testified that she did not believe there was any miscommunication as she remained in contact with Louis for some time after the sentencing while trying to help him retrieve property from his initial arrest.

In contrast, Louis testified that he understood that if he was given a longer sentence than what was recommended in his plea agreement, he could appeal. Louis testified that immediately after sentencing, he asked Amyx about filing an appeal and that she reported that she would speak

---

[36] *Strickland*, 466 U.S. at 694.

[37] Louis's Plea Agreement provided that he waived his right to appeal his sentence except to the extent that "the Court departs upwards from the sentencing Guideline range." *See* Doc. 14 at 8.

to her supervisor about an appeal.  He further testified that, in a phone conversation with Amyx shortly after sentencing, Amyx told him that it would not be in his best interest to file an appeal, leading him to believe Amyx was trying to talk him out of an appeal.  Louis testified, however, that after their conversation, he believed Amyx was going to file an appeal on his behalf.

The Court finds that Louis and Amyx's testimony is not materially different.  Both Amyx and Louis testified that Louis's questions regarding appeal were focused solely on the 27-month deviation from the recommended sentence in the plea agreement.  The testimony is also consistent in that Amyx testified that she felt that Louis did not have a basis for appeal and Louis testified that he felt Amyx was trying to talk him out of an appeal.  Although Louis may have wanted to appeal, both Louis and Amyx testified that Louis never gave Amyx a direct order to file an appeal. The Court concludes that the facts here are materially similar to those in *Andrews v. Colorado*[38]— a case in which the Tenth Circuit concluded that the defendant's trial counsel had not provided ineffective assistance.

Like Amyx, trial counsel in *Andrews* weighed the possibility of an appeal and "concluded in her professional opinion that there were no legitimately appealable issues."[39]  And, like Louis, the defendant in *Andrews* never made a direct request that his attorney file an appeal on his behalf.[40]  Although a disregard by trial counsel of "specific instructions from the defendant to file

---

[38] 379 F. App'x 795 (10th Cir. 2010).

[39] *Id.* at 797.

[40] *Id.* at 798.

a notice of appeal is professionally unreasonable,"[41] neither Amyx nor Louis's testimony supports a finding that Amyx ignored a request by Louis to file an appeal.

The Supreme Court has held that in "cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken," the proper question in analyzing counsel's performance is "whether counsel in fact consulted with the defendant about an appeal."[42] Thus, the Court must look to whether trial counsel "advis[ed] the defendant about the advantages and disadvantages of taking an appeal, and ma[de] a reasonable effort to discover the defendant's wishes."[43] In determining whether trial counsel properly consulted with their client, the Supreme Court has held that a "highly relevant factor" is whether the defendant pleaded guilty, and "whether the plea expressly reserved or waived some or all appeal rights."[44]

Looking to the terms of Louis's plea agreement, the sentence imposed by the Court, and the testimony of both Louis and Amyx regarding their conversations about the possibility of appeal, the Court determines that Amyx's performance did not fall below an objective standard of reasonableness. Louis's plea waived his right to appeal his sentence except to the extent that "the Court departs upwards from the sentencing Guideline range." Louis testified that his conversations with Amyx regarding appeal all stemmed from his concern that the Court had imposed an 87-month sentence, rather than the recommended 60-month sentence. As noted by Amyx, the Court's 87-month sentence—although above the recommendation stated in the plea—was a downward

---

[41] *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327 (1969)).

[42] *Id.* at 478.

[43] *Id.*

[44] *Id.* at 480.

departure from the Sentencing Guidelines. Because the Tenth Circuit does "not hesitate to 'hold a defendant to the terms of a lawful plea agreement,' "[45] the Court concludes that Amyx's advice regarding the likelihood of success on appeal was sound.

Because Amyx properly consulted with Louis regarding his appeal and because Louis never directly requested that Amyx file an appeal on his behalf, the Court concludes that Amyx's performance was not constitutionally deficient.

## C. Louis's Trial Counsel Adequately Investigated the Circumstances Surrounding his Traffic Stop and Was Not Ineffective in Failing to File a Motion to Suppress

Finally, Louis argues that Amyx was ineffective in failing to investigate the circumstances surrounding his traffic stop or file a motion to suppress. This argument is unsupported by the April 30 hearing testimony. The testimony presented at the hearing demonstrates that Amyx reviewed relevant discovery, conducted her own investigation of the circumstances of Louis's arrest, and discussed the likelihood of success, and potential implications, of a motion to suppress with Louis.

First, Amyx testified that she reviewed the Government's discovery, including the video of Louis's traffic stop, and discussed the discovery with Louis. Although Louis was pulled over for turning left on a red light, Louis told Amyx that he was sure that light had been yellow when he made the turn. Amyx testified that after her review of the relevant discovery, she felt that the only ground for filing a motion to suppress would stem from whether the light was red or yellow.

Amyx further testified that because there was a glare in the original video which made it hard to see the color of the light, she was not comfortable making a determination regarding the legality of the stop based solely on the video. Amyx therefore went to the location of the traffic

---

[45] *United States v. Sandoval*, 477 F.3d 1204, 1206 (10th Cir. 2007) (quoting *United States v. Atterberry*, 144 F.3d 1299, 1300 (10th Cir. 1998)).

stop and took her own footage of how the light operated, including timing the light and how it functioned. She testified that once she took her own video, she thought she did not have enough evidence to prove the light was yellow or to challenge the officer's version of events.

After reviewing the case law, she discussed her investigation and the law with Louis and his family. She testified that based on the discovery, the case law, and the videos of the stop, the chances of succeeding on a motion to suppress were slim to none. She also told Louis that she thought filing a motion to suppress would be a huge risk because some prosecutors will take a plea off the table or make negotiation more difficult if a motion to suppress is filed. Given the time Louis was facing and the chance to significantly reduce his sentence by a plea, she felt a plea was in Louis's best interest. After this discussion, Louis gave consent to forgo the motion to suppress and pursue a plea.

Again, the Court concludes that Amyx's representation of Louis was not constitutionally deficient. Amyx's testimony—which Louis did not dispute—shows a diligent review of the circumstances surrounding Louis's traffic stop and the relevant case law. Amyx exercised her discretion and expertise in advising Louis of the likelihood of success of a motion to suppress, as well as the benefits of forgoing the motion and entering a plea. Louis presents no facts which persuade this Court that Amyx's representation fell "outside the wide range of professionally competent assistance."[46] The Court therefore denies Louis's request to alter his sentence.

## IV.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. A

---

[46] *Strickland*, 466 U.S. at 690.

court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[47] A petitioner satisfies this burden if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[48] For the reasons explained above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court denies a COA.

**IT IS THEREFORE ORDERED** Defendant's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 25) is **DENIED.**

**IT IS SO ORDERED.**

This case is closed.

Dated this 30th day of June, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[47] 28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1)(B).

[48] *Saiz v Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).